**AIR LINE STEWARDS AND STEW-ARDESSES ASSOCIATION, LOCAL 550, TWU, AFL-CIO, et al., Plaintiffs-Appellees,**

v.

**TRANSPORT WORKERS UNION OF AMERICA et al., Defendants-Appellants.**

**No. 14431.**

United States Court of Appeals Seventh Circuit.

July 14, 1964.

Rehearing Denied Aug. 21, 1964.

Rehearing Denied Aug. 21, 1964, en banc.

Gilbert Feldman, Chicago, Ill., for appellants.

Ruth Weyand and Lee Leibik, Chicago, Ill., for plaintiffs-appellees, Rita C. Davidson, Washington, D. C., of counsel.

Before CASTLE, KILEY and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

We are asked to review the order of the district court granting plaintiffs' motion for a preliminary injunction. The case arises under the Labor-Management Reporting and Disclosure Act (Landrum-Griffin), 29 U.S.C.A. §§ 401–531 (1959).

Plaintiffs Air Line Stewards and Stewardesses Association, Local 550, an affiliate of Transport Workers Union, AFL-CIO, seven members of the local, and three of its former employees sought an injunction, declaratory judgment, and damages against defendants Transport Workers Union (the international) and seven of its members, individually and on behalf of all members who were not also members of the local.

The complaint consisted of five counts. Specifically, in count one the local sought under section 304 of the Labor-Management Reporting and Disclosure Act termination of a trusteeship imposed by the international. In count two plaintiffs sought reinstatement of Rowland K. Quinn, Jr., who had been removed as president of the local by the international. Plaintiffs in count three requested the international be restrained from claiming that the local owes it $145,000. In count four the three employees who had been discharged by the administrator of the trusteeship requested reinstatement. In the last count Quinn sought damages for libel.

Defendants filed motions to dismiss. They were denied. On November 7, 1963, plaintiffs petitioned the district court for a preliminary injunction. The petition was granted. The injunction enjoined the trusteeship and reinstated Quinn to the office of president. This appeal is from the injunction.

Two issues presented to us are dispositive of the appeal: whether the issue of the legality of the trusteeship is moot and whether the district court had jurisdiction to reinstate Quinn.

In June, 1963, the president of the international notified Quinn as president of the local that the international's administrative committee, with the approval of its executive council, pursuant to section 4 of article 18 of the international's constitution, had appointed Frederic Simpson administrator of the affairs of the local.[1] Quinn was told that a disciplinary action was being instituted by

---

1. Section 4 of article 18 provides:
   "Should any local union, its officers, or members, engage in activities in violation of this Constitution, or of the principles or objects set forth herein, the International Administrative Committee may, in an emergency, with approval in writing or by telegram of a majority of the individual members of the International Executive Council, appoint an administrator of the affairs of such Local Union, who shall forthwith take over and conserve the assets of such Local Union and shall have sole and exclusive authority to speak and act for such Local Union and to administer

the international against him in accordance with section 5 of article 5 of the international's constitution[2] and that Simpson would act as administrator pending the conclusion of the proceeding.

Quinn was charged with certain acts of misconduct: deceiving the local and the international about the local's finances; causing the treasurer of the local to file false financial reports; withholding knowledge from the international of a contract with two attorneys for a ten-year retainer contrary to his promise that in return for loans from the international he would notify it of obligations incurred by the local; submitting budgets limiting legal fees to $1,000 per month when he knew his agreement with the attorneys fixed the fees between $2,100 and $2,350 per month; and not opposing in a state court proceeding the attorneys' claim to a $75,000 fee from a fund belonging to the local.

The charges were heard by the international executive council; they were sustained and Quinn was removed as president. Thereafter and pursuant to the international's constitution, Coleen Boland, the vice president of the local, assumed the office of president with Simpson acting as administrator until the issuance of the preliminary injunction on December 11, 1963.

On January 28, 1964, the international notified the administrator that it was terminating the trusteeship and returning control of the union to the local's officers. The administrator was directed to effectuate the transfer on February 1, 1964.

The international asserts that the district court's order enjoining the trusteeship is no longer properly before this court because the action of the international terminating the trusteeship renders moot the question of the legality of the trusteeship.

Plaintiffs answer that the imposition of the trusteeship was illegal because Quinn was improperly removed as president and that the lifting of the trusteeship requires his restoration to that office; further, that there has been no effective termination of the trusteeship so long as the international has "the right to pick and name [Boland] the person to administer the affairs" of the local.

The constitution of the international and the by-laws of the local provide that whenever a vacancy in the office of president of the local occurs, the vice president shall act as president for the unexpired term. Pursuant to these provisions, Boland automatically succeeded Quinn. It is patent that the international did not arbitrarily choose her as his successor.

■ Although the imposition of the trusteeship and Quinn's deposition as president were interrelated, Quinn's removal did not perpetuate the trusteeship indefinitely nor did the termination depend upon Quinn being restored to the presidency. Whether Quinn was rightfully removed from office is beside the point. The fact is he was removed and

its affairs pending conclusion of the procedure set forth in Section 4 or Section 5 of Article V."

2. Section 5 of article 5 provides:
"In the event the International President shall have reason to believe that any officer or member is failing to comply with any provision of the Constitution, or conducts himself in a manner which is detrimental to the best interest of the Union, he may institute proceedings upon the alleged violations, with due notice of hearing, specifying the section or sections of the Constitution violated or the nature of the con-

duct, before the International Executive Council, or a sub-committee thereof. Upon the basis of the hearing, the International Executive Council is authorized to render a decision, dismissing the charges, suspending, expelling or otherwise penalizing such officer or member, or directing such other action as may be necessary to secure compliance with the Constitution or otherwise to protect and preserve the effectiveness and best interests of the Union. The decision of the International Executive Council shall be subject to review by the International Convention."

the international terminated the trusteeship for reasons other than the mandate of the district court. The issue relating to the trusteeship therefore became moot and is no longer before the district court. Lanigan v. Local 9, Int'l Brotherhood of Elec. Workers, 327 F.2d 627 (7th Cir. 1964); Vars v. International Brotherhood of Boilermakers, 320 F.2d 576 (2d Cir. 1963).

## II.

Plaintiffs alleged in the second count of the complaint that Quinn's removal from office was in violation of section 101 (a) (5) of the Labor-Management Reporting and Disclosure Act in that he was deprived of a fair hearing on the charges filed against him.[3] Jurisdiction is based on section 102 of the act.[4]

The district judge, after a full hearing on the motion for preliminary injunction, sustained plaintiffs' allegations. Specifically, he found that Quinn was prevented from being represented at the union hearing by an attorney; that the international executive council which tried Quinn did not constitute an impartial tribunal; and that the evidence submitted to the council was insufficient to sustain the charges.

Although in the complaint Quinn alleged a violation of his rights as a member of the local, he made no specific averments; nor did the district judge refer

in his findings to a violation of such rights. The essence of the judge's decision is that Quinn's right to continue as president was violated because of the unfairness of the union trial and the insufficiency of the evidence against him.

Defendants assert that the district court lacked jurisdiction to decide whether Quinn's removal as president was proper because the Labor-Management Reporting and Disclosure Act does not give federal courts jurisdiction to scrutinize internal union procedure for the removal of officers. A number of district courts have so held.[5]

Only one court of appeals has spoken on the subject. Although Sheridan v. United Brotherhood of Carpenters, 306 F.2d 152 (3d Cir. 1962), involved section 609 of the act, 73 Stat. 541, 29 U.S.C.A. § 529, that section is closely related in subject matter and language to section 101(a) (5). There, Judge Kalodner expressed the view that neither title one of the act (which includes section 101(a) (5)) nor section 609 protects a union officer's status. "It is the union-membership relationship, not the union-officer or union-employee relationship, that is protected."

The language of section 101(a) (5) supports this view. The section refers only to members; it does not mention officers. Moreover, the legislative history buttresses this interpretation.[6]

---

3. § 101(a) (5), 73 Stat. 522, 29 U.S.C.A. § 411(a) (5) reads:
   "No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing."

4. § 102, 73 Stat. 523, 29 U.S.C.A. § 412 reads:
   "Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be

brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located."

5. Mamula v. Local 1211, United Steelworkers, 205 F.Supp. 915 (W.D.Pa.1962); Vars v. International Brotherhood of Boilermakers, etc., 204 F.Supp. 241 (D. Conn.1962); Hamilton v. Guinan, 199 F. Supp. 562 (S.D.N.Y.1961); Burton v. Independent Packinghouse Workers Union, 199 F.Supp. 138 (D.Kan.1961); Jackson v. Martin Co., 180 F.Supp. 475 (D. Md.1960); Strauss v. International Brotherhood of Teamsters, etc., 179 F. Supp. 297 (E.D.Pa.1959).

6. Cong.Rec.17899 (1959) (remarks of Senator Kennedy); 2 U.S.Code Cong. & Admin.News, pp. 2503–2504 (1959).

■ Section 101(a) (5) secures and protects members of a labor organization qua members but has no application to officers of the union qua officers. We hold, therefore, that the district court had no jurisdiction under section 102 of the act to entertain count two.

Plaintiffs' alleged basis for jurisdiction of the second count of their complaint was section 102. They now say the judge properly concluded as an alternative basis that the district court had pendent jurisdiction to reinstate Quinn. Although they cite no cases to support their position, plaintiffs maintain that under Illinois law an officer of a labor organization unfairly removed from office is entitled to reinstatement and that once the court acquired jurisdiction of the trusteeship issue it had pendent jurisdiction to decide the propriety of Quinn's removal.

■ We need not determine whether Illinois law affords the remedy plaintiffs claim because it is our opinion that the district court did not acquire jurisdiction to decide under state law whether Quinn was unfairly removed.

Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933), shaped the doctrine of pendent jurisdiction of federal courts. According to that case in order to have pendent jurisdiction there must be a single cause of action or wrong arising out of one set of operative facts, ostensibly redressable by federal law but also redressable by state law.

The constitution of the international provides that misconduct of a union officer constitutes grounds for imposition of a trusteeship. Although the same circumstances may lead to both the imposition by the international of a trusteeship and the removal of an officer of the local, the consequences give rise to separate and distinct causes of action. The facts supporting a suit for restraint of a trusteeship and one for reinstatement of a union official are not substantially the same because they do not constitute a single wrong. Moreover, the remedy provided by federal law for the termination of an illegal trusteeship has no relation to the relief which state law may provide for the improper removal of a union officer.

The district court lacked jurisdiction to entertain the second count.

The order granting the preliminary injunction is reversed.